**UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA**

KATHY PARKER,                          )
                                       )
            Plaintiff,        )
                                       )
v.                                     )          Case No. 03-CV-0397-CVE-FHM
                                       )
COGENTRIX BLOUNT COUNTY                )
HOLDINGS, INC., et al.,                )
                                       )
            Defendants.       )

## OPINION AND ORDER

Now before the Court is the motion for summary judgment (Dkt. # 93) filed by defendant

Green Country Energy, L.L.C. as to the claims of plaintiff Kathy Parker for the wrongful death of

her husband, Thomas G. Parker II ("Parker").  In the Fifth Amended Complaint, plaintiff asserts that

Parker was employed by Hansen-Lambert, Inc., a company that supplied labor to Tate Metal Works,

Inc. ("Tate"), on the Green Country Energy Facility Project ("Project").  Parker fell to his death on

June 23, 2001 from scaffolding allegedly designed, supplied, and assembled by defendant Safway

Steel Products, Inc. ("Safway").

## I.

Plaintiff alleges that defendant Green Country Energy, L.L.C. owned the Project, defendant

National Energy Production Corporation (NEPCORP)[1] served as the engineer, procurement, and

contractor on the Project, defendant Bil-Jax manufactured and/or designed the scaffolding and

supplied it to Safway, and defendants John Does 1-5 may have provided work or services that

caused or contributed to Parker's death.  Due to dismissals and stipulations, the only remaining

---

[1]     NEPCORP is in bankruptcy in the Southern District of New York, and has been since the
inception of this litigation.

defendants are Green Country Energy, L.L.C., NEPCORP, and Safway.  Plaintiff seeks damages against these defendants based on five claims for relief:  negligence, negligence per se, negligent supervision, negligent training, and products liability.

In its motion for summary judgment, Green Country argues that it had no involvement in the design and construction of the Project except as to the finished product, and that NEPCORP was an independent contractor who bore sole responsibility for the design and construction of the Project. Plaintiff argues that Green Country had a non-delegable duty to provide a safe work environment for the decedent and that Green Country owed a contractual duty to the decedent, as he was an express third-party beneficiary of Green Country's agreement with NEPCORP.  Green Country maintains that it is not liable for injuries to employees of an independent contractor.  It also contends that the contract between Green Country and NEPCORP was not made for the express benefit of the decedent.  At most, Green Country argues, Parker was an incidental beneficiary.

The contract at issue was termed the "Turnkey Engineering, Procurement and Construction Agreement" ("Agreement").  Its objective was the construction of an 820 megawatt capacity combined cycle power plant. Motion, Dkt. # 93, Ex. A.  NEPCORP hired Tate to perform welding services and Safway to provide and construct scaffolding.  Tate employed Parker, who was working on an exhaust stack at the time of his fall.  The exhaust stack was to be 150 feet tall.  Plaintiff represents that the distance Parker fell may have been 60 to 70 feet as he was attempting to make his way to the ground after he finished his work.

The Agreement obligates NEPCORP to perform all work associated with the design and construction of the Project and to provide Green Country with an operating plant.  Id. at 15, ¶ 3.1. The Agreement further provides that Green Country, as the Project "Owner"

2

shall not be responsible for and shall have neither control over nor charge of construction means, methods, techniques, sequences or procedures, or for safety precautions and programs in connection with the Work or the performance by Contractor of its warranty obligations herein, and Owner shall not be responsible for Contractor's failure to carry out the Work or Contractor's warranty obligations herein in accordance with this Agreement.  Owner shall not be responsible for or have control or charge over the acts or omissions of Contractor, any Subcontractor, or any of their agents or employees, or any other Persons performing any of the Work or Contractor's warranty obligations herein.  No inspection, or failure to inspect, by Owner shall be a waiver of Contractor's obligations, or be construed as approval or acceptance of Work or any part thereof.

Id. at 15, ¶ 3.3.

Several provisions in the Agreement specifically address issues of worksite safety.  See id. at ¶¶ 3.8.4, 3.8.14, 3.8.16, 36.2, 36.3, 36.4.  Paragraph 36.2 provides, in relevant part:

Safety Programs.  Contractor shall be responsible for initiating, maintaining and supervising all safety precautions and programs in connection with the Work.  Contractor shall take all reasonable precautions for the safety of, and shall provide all reasonable protection to prevent damage, injury or loss to:

(a) all employees engaged in connection with the Work and all other persons who may be affected thereby;

* * *

In connection therewith, Contractor shall:

* * *

(ii)    conduct  periodic  Plant  safety  meetings  with  all Subcontractors, as reasonably, [sic] required by Owner;

(iii)   develop, implement and enforce procedures for advising Subcontractors of, and correcting safety violations and deficiencies; and

(iv)    take all other actions necessary to provide a safe work environment in accordance with applicable Laws and applicable Permits.

Id. at ¶ 36.2.

3

Plaintiff contends that the safety provisions in the Agreement were negotiated for the specific benefit of "all Persons," including Parker, as set forth in the Agreement at paragraph 3.8.16.[2] Paragraph 3.8.16 requires the contractor (NEPCORP) to "[s]ubmit Contractor's safety program for Owner's review and provide all necessary safeguards, including fencing, signs, security services, fire protection and the like, for the protection of the Job Site, the Work, the Plant and all Persons and other property related thereto; . . . ." Id. at 3.8.16. Green Country points out that, under the provision entitled "Third-Party Beneficiaries," "[t]his Agreement and each and every provision thereof is for the exclusive benefit of the parties hereto and not for the benefit of any third party other than any person or entity who purchases, leases, or takes a security interest in an undivided interest in the Plant." Id. at 39.13.

Green Country was the sole entity having authority to require NEPCORP to comply with the Agreement. The Agreement permits Green Country to take certain actions, such as visiting the site or maintaining staff there, to ensure that NEPCORP fulfilled its obligations under the Agreement. See id. at ¶¶ 3.2, 3.8.8, 3.8.14, 3.8.15, 3.8.16, 3.8.19, 3.8.22, 3.8.24, 3.8.27, 3.8.32, 3.8.33, 8.1. Certain provisions, in particular, obligated NEPCORP to remove personnel from the job site if Green Country reasonably believed such personnel to be creating a risk to the timely or safe completion of the work. Id. at ¶¶ 3.8.14, 5.1, 21.4(g). One provision required NEPCORP to obtain prior approval from Green Country before removing any "Key Personnel" from the work. Id. at ¶ 5.2. Other provisions reference a "Schedule of Major Subcontractors" which could not be modified

---

[2]     Plaintiff relies upon the deposition of Gary Carraux for this proposition, although neither the parties' briefs nor the deposition excerpt attached to the plaintiff's response provide the position or employment of Gary Carraux in order to show that his testimony is relevant. The Court presumes Carraux is a Green Country or NEPCORP employee, officer, or manager.

by NEPCORP without prior approval of Green Country. Id. at ¶ 21.1.  NEPCORP warranted that work performed by subcontractors would be in accordance with the applicable provisions of the Agreement. Id. at ¶ 21.2.

## II.

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Kendall v. Watkins, 998 F.2d 848, 850 (10th Cir. 1993).  The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 317. "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Id. at 327.

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." Anderson, 477 U.S. at 252.  In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or

whether it is so one-sided that one party must prevail as a matter of law." Id. at 250.  In its review, the Court construes the record in the light most favorable to the party opposing summary judgment. Garratt v. Walker, 164 F.3d 1249, 1251 (10th Cir. 1998).

### III.

Green Country argues that NEPCORP was an independent contract and, thus, Green Country cannot be held liable for the negligence, if any, of NEPCORP or NEPCORP's subcontractors.  "An 'independent contractor' is one who engage to perform a certain service for another, according to his own manner and method, free from control and direction of his employer in all matters connected with the performance of the service, except as to the result or product of the work."  Oklahoma Publishing Company v. Greenlee, 300 P. 684, 686 (Okla. 1931) (quoting Southern Const. Co. v. State Indus. Comm'n, 240 P. 613 (Okla. 1925)); see also Lane-Hill v. Ruth, 910 P.2d 360, 362 (Okla. Ct. App. 1995).  Under Oklahoma law,

> [t]he general rule is that an owner is not liable for the negligent acts of its independent contractor, except where the work is inherently dangerous or unlawful, or in cases where the principle contractor owes a contractual or a defined legal duty to the injured party in the performance of the work.

Oklahoma City v. Caple, 105 P.2d 209, 212 (Okla. 1940); see Bouziden v. Alfalfa Elec. Coop., Inc., 16 P.3d 450, 455 (Okla. 2000); Hudgens v. Cook Ind., Inc., 521 P.2d 813, 815 (Okla. 1973).

Plaintiff does not dispute that NEPCORP was an independent contractor.  Instead, she relies on the exceptions to the general rule.  The Hudgens court explained that the rule

> is sufficiently comprehensive to include not only work, which from its description is "inherently" or "intrinsically dangerous," but also work which will in the ordinary course of events cause injury to others if certain precautions are omitted, but which may as a general rule be executed with safety if those precautions are taken.

521 P.2d at 815 (citation omitted).  Plaintiff points to the fact that Parker was required to perform welding services on the Project, which often placed him in excess of one hundred feet in the air and required him to navigate a scaffolding system that did not include a personal fall arrest system.  Such work, plaintiff contends, is inherently dangerous.

Further, plaintiff contends that Green Country owed Parker a non-delegable duty in the performance of his work, given paragraph 3.8.16 of the Agreement.  The duty to which plaintiff alludes has been stated as the "duty of proprietors to protect business invitees, generally, against hidden dangers on the premises of which the proprietors are, or should be, aware."  Hatley v. Mobil Pipe Line Co., 512 P.2d 182, 187 (Okla. 1973).  Plaintiff specifically argues that a genuine issue of material fact exists as to whether Green Country was negligent in failing to ensure that NEPCORP was in compliance with the safety provisions of the Agreement and, specifically, in failing to require NEPCORP and Safway to provide a fall arrest system for the use by the workers on the scaffolding.

Green Country argues that its duty to provide a reasonably safe place to work is not owed to someone in the employ of the independent contractor.[3]  See Marshall v. Hale-Halsell Co., 932 P.2d 1117, 1119 (Okla. 1997);  Hatley, 512 P.2d at 186; Young v. Bob Howard Automotive, Inc., 52 P.3d 1045, 1049 (Okla. Ct. App. 2002).  The Hatley court reasoned that one who "does not himself undertake to interfere with or direct [the] work is not obligated to protect the employees of the contractor from hazards [w]hich are incidental or part of the very work which the independent contractor has been hired to perform." 512 P.2d at 186 (quoting Vecchio v. Anheuser-Busch, Inc., 328 F.2d 714, 718 (2d Cir. 1964)).  Significantly, Vecchio involved a claim by representatives of

---

[3]     The Court deems irrelevant the fact that Parker was an employee of a subcontractor, and not the contractor.

7

the estate of a worker who fell from a scaffold and was killed while repairing a sign.  Id. at 719. There is no evidence that Green Country interfered with or directed the work.  Falling from scaffolding erected 60 to 70 feet was a hazard incidental to or part of the work NEPCORP and Tate were hired to perform.

Further, an employee of the independent contractor (here, the subcontractor) is not a third person for whom the "inherent danger" exception applies.  See Young, 52 P.3d at 1051.  The Young court reasoned that workers' compensation benefits are available to employees and the costs of premiums is necessarily included in the contract price.  Id. at 1050-51 (citations omitted).  Failure to insulate the employer of an independent contractor from liability would encourage the employer to utilize its own employees to do work they are less qualified to do.  Id. at 1051 (citation omitted). Finally, risk management considerations favor this policy, as "[m]embers of the general public are less likely to be aware of work site dangers and thus could not adequately protect themselves, while employees at the work site would possess knowledge of the nature of the project and its attendant risks."  Id. at 1051 (citation omitted).

The Court finds the Young rationale persuasive. The work for which Parker was employed was inherently dangerous, but he was an employee who knew the risks involved in welding at great heights.  Green Country hired NEPCORP, NEPCORP hired Tate, and Tate hired Parker to perform that work.   Thus, the exceptions to the general rule that an owner is not liable for the negligent acts of its independent contractor do not apply here.

## IV.

Plaintiff's argument that Parker was an express third-party beneficiary of the Agreement is similarly flawed.  Oklahoma law provides that "[a] contract, made expressly for the benefit of a third

person, may be enforced by him at any time before the parties thereto rescind it." Okla. Stat. tit. 15, § 29 (2001); see, e.g., Roach v. Atlas Life Ins. Co., 769 P.2d 158, 161 (Okla. 1989); First Nat. Bank in Pawhuska v. Quinton, 80 P. 2d 593, 595 (Okla. 1938). "A third party beneficiary may avail himself of its benefits and maintain an action thereon, notwithstanding he was a stranger thereto, had no knowledge of the contract, and was not identified therein when it was made if it appears the parties intended to recognize him as a beneficiary." Keel v. Titan Const. Corp., 639 P.2d 1228, 1231 (Okla. 1981) (citation omitted). "Moreover, it is not necessary that the third party beneficiaries be specifically named in the contract or be identified at the time the pact is made if it appears it was expressly made for the benefit of a class of persons to which group the party seeking enforcement belongs." Oil Capital Racing Assn., Inc. v. Tulsa Speedway, Inc., 628 P.2d 1176, 1179 (Okla. Ct. App. 1981) (citation omitted).

Plaintiff relies on paragraph 3.8.16 of the Agreement and the testimony of one individual to show that Parker, although a stranger to the Agreement who had no knowledge of it and was not identified therein, was a member of the class of persons for whom an intended benefit was conferred by Green Country and NEPCORP. Unfortunately for plaintiff, the Agreement specifically excludes third-party beneficiaries. Motion, Dkt. # 93, Ex. A, ¶ 39.13. Paragraph 39.13 makes it clear that the contracting parties, Green Country and NEPCORP, did not intend for a third person to receive a benefit which might be enforced in the courts.

Finally, the fact that a person may derive incidental benefits from an agreement made between others is legally insufficient to confer standing upon him. See McFarland v. Atkins, 594 P.2d 758, 761 (Okla. 1979). "[A] third party who is benefited only incidentally by the performance of such a contract acquires no rights against the promisor or the promisee, and cannot maintain an

9

action thereon." <u>Lynn v. Rainey</u>, 400 P.2d 805, 814 (Okla. 1964) (citation omitted).  At most, Parker could derive incidental benefits from the Agreement's safety provisions.  He acquired no rights against Green Country for NEPCORP's alleged failure to ensure that its subcontractor, Tate, provided a fall arrest system for Parker's use.

V.

**IT IS THEREFORE ORDERED** that Green Country's motion for summary judgment (Dkt. # 93) is hereby **GRANTED**.  Green Country is dismissed as a defendant in this case.

**DATED** this 18th day of July, 2005.

CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT