UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| KATHY PARKER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 03-CV-0397-CVE-FHM |
| ) | |
| COGENTRIX BLOUNT COUNTY ) | |
| HOLDINGS, INC., et al., ) | |
| ) | |
| Defendants. ) | |

## OPINION AND ORDER

Now before the Court is Defendant Safway Services, Inc.'s Motion for Summary Judgment and Brief in Support (Dkt. # 164). Defendant moves for summary judgment on the claims of plaintiff Kathy Parker against Safway Services, Inc. ("Safway" or "defendant") for the death of her husband, Thomas G. Parker II ("Parker"), and the Court heard argument on the motion at the January 3, 2006 pretrial conference.

**I.**

Two defendants remain in this matter: National Energy Production Corporation ("NEPCORP")[1] and Safway.[2]  Plaintiff seeks damages against these defendants based on five claims for relief: negligence, negligence per se, negligent supervision, negligent training, and products liability.

Parker was employed by Hansen-Lambert, Inc., a workforce supply company. In 2001, Hansen-Lambert provided workers, including Parker, to Tate Metal Works, Inc., an entity

---

[1] NEPCORP is currently in bankruptcy proceedings in the Southern District of New York, and has been since the inception of this litigation.

[2] Safway Services, Inc. was formerly known as "Safway Steel Products, Inc.," the name appearing in Plaintiff's Fifth Amended Complaint.

subcontracted to perform metal work on the Green Country Energy Project ("the Project"), a power plant owned by Green Country Energy, L.L.C., located in Bixby, Oklahoma. Green Country Energy, L.L.C. hired NEPCORP to act as general contractor for the Project.[3]

Parker's work responsibilities at the Project included completing welding on three exhaust stacks. The height of the stacks, approximately 150 feet, required the assembly of scaffolding, which Safway supplied, assembled, and maintained. On the third exhaust stack, where Parker was working on the day of his fall, Safway installed two, separate scaffolding structures: one inside the exhaust stack ("the stack section") and one attached to the breech area immediately adjacent to the exhaust stack ("the breech section"). The stack section and the breech section shared a wall through which baffle holes were cut to permit proper gas flow between the two areas and which, it appears, workers used to cross from one scaffolding section to the other.

On June 23, 2001, in preparation for his departure from the Project work site, Parker descended from one of the uppermost platforms of the scaffolding in the stack section. Before descending, Parker informed two co-workers, Russell Mercer and Tim Williamson, that he planned to cross over to the breech section to retrieve a bucket which contained certain personal items he wished to take with him to his next work site. The details of Parker's fall are unclear, but it is agreed that he did not proceed to the floor of the stack section to cross over to the breech section. Instead, he utilized one of the baffle holes connecting the two sections to cross over from the stack

---

[3]  Plaintiff's Fifth Amended Complaint names Hansen-Lambert, Inc., Tate Metal Works, Inc., Green Country Project, L.L.C., and Green Country Energy, L.L.C. as defendants in this action. Those defendants have since been dismissed or had summary judgment awarded in their favor.

section to the breech section. During the course of his attempt to retrieve his supplies, Parker fell somewhere between forty and seventy feet. The fall resulted in his death.

At the heart of the parties' dispute is the cause of Parker's fall. Plaintiff argues that Safway is responsible due to its negligence in inspecting and maintaining the scaffolding in use at the Project and for the assembly of a defective scaffolding system. Safway responds that it owed no duty to Parker and that there is no evidence that Safway personnel negligently maintained the scaffolding on the project or assembled a defective scaffolding system. It moves for summary judgment on all five of plaintiff's claims.

## II.

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Kendall v. Watkins, 998 F.2d 848, 850 (10th Cir. 1993). The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 317. "Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Kaul v. Stephan, 83 F.3d 1208, 1212 (10th Cir. 1996). "Summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Durham v. Xerox Corp., 18 F.3d 836, 838-39 (10th Cir. 1994)

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." Anderson, 477 U.S. at 252. In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 250. In its review, the Court construes the record in the light most favorable to the party opposing summary judgment. Garratt v. Walker, 164 F.3d 1249, 1251 (10th Cir. 1998).

### III.

As to plaintiff's claim of negligence, Safway submits that it owed no duty to Parker, and assuming, arguendo, that such a duty existed, plaintiff has submitted no evidence of a breach of that duty or a causal connection between this alleged breach and Parker's death.

Under Oklahoma law, a successful claim for negligence requires a showing of (1) an existing duty; (2) a violation of that duty; and (3) and injury proximately resulting from that violation. See Dirickson v. Mings, 910 P.2d 1015, 1018 (Okla. 1996). The presence or absence of a duty is a threshold determination that must be made as a matter of law. First Nat'l Bank in Durant v. Honey Creek Entm't Corp., 54 P.3d 100, 105 (Okla. 2002). "Duty depends upon the relationship between the parties and the general risks involved in the undertaking; . . ." Bouziden v. Alfalfa Electric Coop., Inc., 16 P.3d 450, 455-56 (Okla. 2000). The Oklahoma Supreme Court has identified

foreseeability as chief among the factors relevant to determining the existence of a duty. Delbrel v. Doenges Bros. Ford, Inc., 913 P.2d 1318, 1321 (Okla. 1996) ("Foreseeability as an element of duty of cares creates a 'zone of risk' and is a minimum threshold legal requirement for opening the courthouse doors.").

Defendant insists that it owed no duty to Parker. Plaintiff responds that, by virtue of Safway's exclusive control over the design, assembly, maintenance, and disassembly of the scaffolding utilized on the Project, it retained a duty to the users of the scaffolding, including Parker, to complete those tasks properly.

In Safway Rental & Sales Co. v. Albina Engine & Mach. Works, Inc., 343 F.2d 129 (10th Cir. 1965), the Tenth Circuit, applying Oklahoma law, rejected an argument much like the one offered by defendant. In that case, the court examined the possible negligence of a company performing essentially the same duties as those performed by defendant in this case. The court observed that "Safway alone rented the equipment to the users, and men it paid handled the storage, servicing, and delivery to the users," id. at 131, and concluded that the defendant's agreement to service the scaffolding while in use created a concomitant duty to do so in a workmanlike manner. Wrote the court:

> The record amply supports the trial court's findings that by the express agreement to service the equipment Safway was obligated to do so in a workmanlike manner so that it was safe for use for its intended purpose. The danger to the user of such cable-supported working platforms from defects in the cables is obvious, and 'servicing' includes keeping the cables in safe working order.

Id. The Oklahoma Supreme Court has more recently articulated a similar principle. In Iglehart v. Board of County Comm'rs of Rogers County, 60 P.3d 497 (Okla. 2002), the court stated, "We recognize the traditional common-law rule that whenever one person is by circumstances placed in

5

such a position with regard to another, that, if [it] did not use ordinary care and skill in his [its] own conduct, [it] would cause danger of injury to the person or property of the other, a duty arises to use ordinary care and skill to avoid such danger." Id. at 502.

Safway possessed sole responsibility for assembling and maintaining the scaffolding to be used by Parker and his fellow workers. The nature of Safway's contractual obligation charged Safway with the responsibility to exercise its duties in a way that would not bring harm to Parker and his coworkers. Accordingly, the Court holds, as a matter of law, that Safway owed a duty to Parker to exercise ordinary care in the exercise of its responsibilities relating to the scaffolding used on the Project.

Having held that Safway possessed a duty to Parker, the Court's task shifts to determining the issue of breach. "The question of whether a duty is owed by a defendant is one of law; a breach of that duty is a question of fact for the trier." Id. Thus, at the summary judgment stage, the Court does not resolve the question of possible breach, but determines whether plaintiff has sufficiently established a genuine issue of material fact as to Safway's breach of its duty to Parker.

Plaintiff alleges that Safway breached its duty to Parker by failing to complete daily inspections required by its written agreement with NEPCORP and failing to notify Parker and his co-workers that the ladder on the north end of the breech section scaffolding did not reach all the way to the top platform.[4]

---

[4] Mercer, Parker's co-worker, testified that after completing the welding necessary at a certain level in the breech area, the welders notified Safway employees that the scaffolding needed to be elevated a level. Instead of moving the scaffolding up, however, Safway personnel removed a level from the scaffolding. A second crew was required to replace the incorrectly removed level and to add an additional level. From that point, Mercer testified, the ladder on the north end of the breech section scaffolding was shorter than the ladder on the south side and did not reach all the way to the top platform. Exhibits in Support of Plaintiff's

The agreement between Safway and NEPCORP requires that Safway employees tag, date, and inspect all scaffolds every day during their use on the Project. Defendant Safway Services Inc's Motion for Summary Judgment and Brief in Support (hereinafter "Defendant's Motion for Summary Judgment") (Dkt. # 164), Ex. E., Rental Agreement. Whether those inspections were conducted properly, or at all, is contested. Safway offers the testimony of four Safway employees -- Alberto Barbosa, Todd Dunbar, Malachi Millard, and Billy Hollock -- as evidence that the required inspections occurred. Two[5] of those defendants testified that Safway personnel conducted daily inspections of the scaffolding used on the Project. Id. at Ex. H, Videotaped Deposition of Alberto Barbosa, at 34; Ex.I, Videotaped Deposition of Todd Dunbar, at 23.

Plaintiff, for her part, relies on the testimony of Mercer and Williamson, Parker's fellow workers, and the absence of any mention of inspections in work logs kept by Safway personnel. Mercer and Williamson testified that they did not see Safway personnel inspecting the scaffolding during the course of their work. Exhibits in Support of Plaintiff's Response (Dkt. # 169), Deposition of Russell James Mercer (hereinafter "Mercer Deposition"), at 107; Deposition of Timothy E. Williamson, at 70. Plaintiff also points to the absence of any notations in daily work logs

---

Response to Defendant's Motion for Summary Judgment and Amended Undisputed Material Facts (Dkt. # 169) (hereinafter "Exhibits in Support of Plaintiff's Response") (Dkt. # 169), Mercer Deposition, at 99-100.

[5] Malachi Millard testified to his understanding of what a typical inspection before a shift would entail. Defendant's Motion for Summary Judgment (Dkt. # 64), Videotaped Deposition of Malachi Millard, at 29. Likewise, Billy Hollock testified that Safway's contract with NEPCORP required Safway to conduct daily inspections and that a designated Safway employee was responsible for those inspections. Id. at Ex. I, Videotaped Deposition of Billy Hollock, at 101. As there is no dispute that Safway was obliged by its agreement with NEPCORP to conduct daily inspections, this testimony as to standard operating practice is of little assistance in determining whether those inspections actually occurred.

7

maintained by Safway documenting the occurrence of inspections. Defense counsel represented at the January 3 hearing that Safway personnel recorded scaffolding inspections in another log which is not in the summary judgment record and is unavailable to the parties. The Court observes in the parties' dispute a sufficiently significant factual dispute to make summary judgment on the issue of Safway's breach inappropriate.

To withstand summary judgment, however, plaintiff must provide evidence that Safway's alleged breach caused the injury in question, in this case, Parker's death. "The law in Oklahoma is clear that before a defendant will be liable for a plaintiff's injuries, the plaintiff must prove that his injuries resulted directly and proximately from the defendant's negligence." Prince v. B.F. Ascher Co., Inc., 90 P.3d 1020, 1028 (Okla. Civ. App. 2004). An allegedly negligent act constitutes a proximate cause of an injury if it "in the natural and continuous sequence, produces the plaintiff's injury and without which the injury would not have happened." Woolard v. JLG Industries, Inc., 210 F.3d 1158, 1172 (10th Cir. 2000); Dirickson, 910 P.2d at 1019 ("[P]roximate cause has been defined in our cases as the efficient cause which sets in motion the chain of circumstances leading to the injury."). "Failure to establish that the defendant's negligence was the proximate cause of the harmful event is fatal to the plaintiff's claim." Lefthand v. City of Oklahoma, 968 P.2d 1224, 1225-26 (Okla. 1998).

Plaintiff argues that Safway personnel's failure to inspect the scaffolding, identify the shorter ladder, and notify Parker and his co-workers of the hazard associated with the short ladder led to her husband's fall. The critical link in this proposed chain of causation is that between Parker's use of the shorter ladder and his fall from the breech scaffolding.

8

It is undisputed that no one witnessed Parker's fall from the scaffolding within the breech section. Mercer and Williamson both testified that, the last time they saw Parker, he was on the intermediate platform within the stack section scaffolding. Defendant's Motion for Summary Judgment (Dkt. # 164), Ex. M, Deposition of Timothy E. Williamson, at 151; Ex. P., Russ Mercer Accident Report. Neither man observed whether Parker successfully traveled from the stack section to the breech section. Assuming Parker completed that trip without incident, neither man can testify with any certainty as to whether Parker fell attempting to ascend or descend the shorter ladder, if, in fact, he fell from the ladder.

In the absence of any eyewitness to Parker's fall, a multitude of theories relating to the cause of his fall abound. Upon investigation following the fall, Mercer theorized that Parker successfully crossed from the stack scaffolding to the breech scaffolding, but upon reaching the breech scaffolding, fell, either on his ascent to retrieve his bucket or in the course of using the short ladder to descend from the top platform. Defendant Safway Services, Inc's Amended Statement of Undisputed Material Facts in Support of its Motion for Summary Judgment and Brief in Support (Dkt. # 165), Video Deposition of Russell James Mercer, at 168-69. Defense expert David H. Glabe opined during his deposition that Parker may have fallen during the course of his movement from the stack section scaffolding to the breech area scaffolding; in the course of navigating the guardrail surrounding the scaffolding platform in the breech section; or from the ladder. Plaintiff's Surreply to Defendant Safway's Reply to Plaintiff's Response to Defendant's Motion for Summary Judgment and Amended Statement of Undisputed Facts (hereinafter "Plaintiff's Surreply") (Dkt. # 199), Ex. C., Deposition of David H. Glabe, P.E., at 32-33. Glabe gave no particular credit to any one theory,

however, stating that plaintiff's claim that the short ladder caused Parker's fall is "as reasonable or unreasonable as any other theory." Id. at 33.

Certain evidentiary materials do identify a fall from a ladder as the cause of Parker's death. A report completed by the OSHA after the fall identifies as the source of Parker's injury, a "Ladder" and the cause of the fatality as "Fall from/with ladder." Id. at Ex. D, OSHA Fatality/Catastrophe Report. Likewise, an accident report completed by Hansen-Lambert identifies the cause of Parker's accident as "slipping off ladder." Id. at Ex. E., Hansen Lambert Accident Report, at 1. Finally, one of plaintiff's two experts, Edward J. Jensen, testified that he believes Parker fell from the ladder, but acknowledged that no one knows exactly why Parker fell. Defendant's Response to Plaintiff's Surreply (Dkt. # 200), Oral Deposition of Edward J. Jensen, Ex. A, at 27, 55-56. Notably, none of the sources attributing Parker's fall to a ladder specifies how or why Parker fell from the ladder.

Only one piece of evidence in the summary judgment record unequivocally identifies the short ladder as the cause of Parker's death. A surreply filed by plaintiff[6] incorporates the expert report and testimony of J. Nigel Ellis, Ph.D., plaintiff's second expert witness. Dr. Ellis identified, inter alia, that the presence of the short ladder as one of the causes of Parker's fall from the scaffolding assembled by Safway. He based his causation opinion on a review of certain evidence relating to the fall, including photographs of the scaffolding structure, testimony of workers at the Project, sketches of the scaffold design, and reports provided by OSHA. Plaintiff's Surreply (Dkt. # 199), Ex. A., Ellis Expert Report, at 1. After reviewing that material, Dr. Ellis's report concludes

---

[6] On January 20, 2006, plaintiff filed a surreply (Dkt. # 199) further outlining plaintiff's claim of products liability, to which defendant filed a response (Dkt. # 200).

10

that Parker's body placement following the fall and a dent in a rail which Parker hit on his descent confirmed that Parker fell from the short ladder attached to the scaffolding.

As revealed by Ellis's deposition testimony, however, his conclusions are based upon speculation about the events leading to Parker's fall:

> So he may have gone through the circle hole in the stack, one of those -- where the scaffolds do meet up or come very close to each other, he may have transferred at that point.
>
> So we are looking at someone who is mission-driven. He is heading out of there. He's told people he is going to see them when he get[s] down. He's leaving a little early so he can go and get whatever it is, his tool or his glasses, or whatever it is, that various people say that he may have had in the bucket at the top of that particular ladder, accessed it in the middle of the 44-foot height, if that's true, and then either goes down and forgets his tool or his pliers or his whatever up in the bucket, or he goes up. And at some point, he loses his grip and falls.
>
> Now my experience is that when your leg -- the way your legs behave -- if he was on his left – bounces on his left leg and he lets go of the rung, or doesn't get ahold of it to begin with, if he's transferring over there, then the left leg pivots you out or pushes you out three feet, which, according to a National Bureau of Standards Study in the middle '90s, pushes you out as much as much as eight feet from the ladder, or a place where you fall off.

Id. at Ex. B, Deposition of J. Nigel Ellis, Ph.D., at 127. Dr. Ellis's theory is, in fact, conjecture as to the cause of Parker's fall.

The Court is left with a number of competing theories concerning the cause of Parker's fall, and plaintiff urges the Court to adopt its theory of causation. Although the summary judgment standard requires that all inferences be drawn in favor of the non-moving party, see Byers v. City of Albuquerque, 150 F.3d 1271, 1274 (10th Cir. 1998), the non-movant receives the benefit of only those inferences that are "justifiable," Liberty Lobby, 477 U.S. at 255, "reasonable," Gullickson v. Southwest Airlines Pilots' Ass'n, 87 F.3d 1176, 1183 (10th Cir. 1996), or "rational," Ortiz v. Norton, 254 F.3d 889, 896 (10th Cir. 2001). Inference, by definition, involves the analytical

11

progression from "one or more propositions, statements, or judgments considered as true." Webster's Third New International Dictionary (1981). The evidence in the summary judgment record does not constitute such a basis of known facts from which the Court may draw a justifiable inference as to the cause of Parker's fall. Nor may the speculative causation theory of a proposed expert, in this case, Dr. Ellis, take the place of reliable evidence. See May v. Dover Elevator Co., 845 F. Supp. 377, 381 (E.D. Va. 1994) ("[I]t is well-settled that an expert witness's endorsement of a wholly speculative theory of causation does not cure the plaintiff's case under Virginia, or any other law. . . . [A]n expert's endorsement cannot save what remains a theory based on guesswork.").

Accordingly, the Court finds that plaintiff has failed to raise a genuine issue of material fact as to the causal connection between defendant's alleged breach of its duty to Parker and Parker's fall from the breech scaffolding. The Court, therefore, grants defendant's motion for summary judgment as to plaintiff's negligence claim.

**IV.**

At the January 3 hearing, the Court on January 3, plaintiff's counsel conceded that nothing in the record supports plaintiff's claim of negligence per se, as there is no evidence of defendant's violation of any state or federal regulations. Having independently reviewed the record, the Court agrees with plaintiff's assessment and grants summary judgment as to that claim.

**V.**

Defendant bases its entitlement to summary judgment on plaintiff's claims of negligent training and supervision on its compliance with applicable regulations governing the use of ladders in scaffolding structures. Plaintiff's response to defendant's motion for summary judgment does not directly address defendant's argument, or discuss her claims of negligent supervision and training

at all. However, at the January 3 hearing, plaintiff's counsel cited Safway employees' mistaken removal of a ladder connected to the scaffolding on the Project, and failure to tag the short ladder to notify workers of the hazard it posed, as the basis for plaintiff's claims of negligent supervision and training.

To withstand summary judgment on her claims of negligent supervision and training, plaintiff must do more than demonstrate that individual Safway employees negligently executed their duties in installing the scaffolding in question. She must present evidence creating a genuine issue of material fact as to any alleged causal connection between Safway's failure to train or supervise its employees and the injury to Parker as a result. No such evidence exists in this case. Even if a jury were to accept plaintiff's claim that Safway employees negligently installed or maintained the scaffolding in question, there is no evidence in the record demonstrating that negligence was due to Safway's failure to train or supervise its employees. The Court grants defendant's motion for summary judgment on that ground.

**VI.**

Defendant moves for summary judgment on plaintiff's claim of products liability on the ground that plaintiff cannot establish that a defect existed in the scaffolding used at the Project or that any alleged defect caused Parker's death.

A successful products liability claim requires a showing that (1) the product in question was defective; (2) the defect existed in the product at the time it left the manufacturer's possession and control; (3) the defect made the product "unreasonably dangerous;" and (4) the defect was the cause of the injury. See, e.g., Prince, 90 P.3d at 1026 (citing Kirkland v. General Motors Corp., 521 P.2d 1353, 1363 (Okla. 1974)). The Oklahoma Supreme Court has described the burden borne by a

plaintiff pursuing a products liability claim as "a large and heavy one . . . for he must prove that his injury has been caused not necessarily by the negligence of the Defendant but by reason of a defect 'built in' and existing at the time of injury." Kirkland, 521 P.2d at 1363.

Fundamental to a products liability claim under Oklahoma law is proof that a product is defective. The Court begins, then, with the parties' dispute over the alleged defectiveness of the scaffolding provided by Safway. "A product is not defective when it is safe for normal handling . . . ." Duane v. Oklahoma Gas & Elec. Co., 833 P.2d 284, 286 (Okla. 1992). A product may be defective, however, due to a problem in the product's design. Attocknie v. Carpenter Mfg., Inc., 901 P.2d 221, 227 (Okla. Civ. App. 1995).

Plaintiff offers the signed affidavit, expert report, and deposition testimony of Dr. Ellis to support her claim that the scaffolding supplied and maintained by Safway was defective. Dr. Ellis's report identifies what he considers four defects in the design of the scaffolding: the absence of fall protection for users of the ladders attached to the scaffolding; the failure to incorporate "swing gates" that would eliminate the need for the user to climb over the top of or through the railing surrounding each scaffolding platform to access the ladder attached to the scaffolding; the use of a straight seventy foot ladder without slip resistant handles; and the presence of the shorter ladder attached to the breech scaffolding. Plaintiff's Surreply (Dkt. # 199), Ex. A., Affidavit of J. Nigel Ellis, Ph.D. Plaintiff also offers a letter sent by OSHA to the president of Tate Metal Works, Inc. on September 27, 2001. Although the letter notes that no OSHA standard is applicable and, therefore, no citation appropriate, it identifies three hazards in the scaffolding structure assembled by Safway: access to the ladder attached to the scaffolding required climbing on and/over the guardrail system surrounding the scaffolding platform; the ladder did not have a ladder safety device

14

or a self-retracting lifeline for employees' use with their safety harnesses; and the attached ladder was in so-called "straight sections" of approximately seventy-five feet in length, without a cage, well, or offsets. Id. at Ex. F., OSHA Letter. Defendant responds, again, that the ladder in question complied with all applicable safety regulations and was, therefore, not defective.

The Court determines, however, that, as to the question of defect, the testimony of Dr. Ellis and the letter transmitted by OSHA identifying hazards in the scaffolding structure constitute sufficient evidence to raise a genuine issue of material fact as to the existence of a defect in the assembly of the scaffolding provided by Safway.

Plaintiff must also offer admissible evidence that the alleged defects made the product unreasonably dangerous. See Kelley By and Through Kelley v. Rival Mfg. Co., 704 F. Supp. 1039, 1043 (W.D. Okla. 1989). A product is unreasonably dangerous only "when a defect in the product renders it less safe than expected by the ordinary consumer . . . ." Woods v. Fruehauf Trailer Corp., 765 P.2d 770, 774 (Okla. 1988). A user with specialized knowledge is charged with that knowledge in determining whether a product is less safe than the user would expect. "Because a product might be unreasonably dangerous in the hands of a home handyman does not make it so when used on a commercial work site by professionals." Hutchins v. Silicone Specialties, Inc., 881 P.2d 64, 67 (Okla. 1993); see also Woods, 765 P.2d at 774 ("[I]f the ordinary consumer of a tank trailer is one who is familiar with the hazards associated with loading, transporting and unloading gasoline, an alleged 'defect' may not render the product less safe than expected where the same 'defect' may render the product unsafe as to the general public.").

There is no evidence in the record to suggest that the defects alleged by plaintiff made the scaffolding less safe than might have been expected by Parker.[7]  The hazardous potential involved in performing work of any kind on a scaffolding system at the heights utilized on the Project is readily apparent, as is the inherent danger in the use of a ladder to access work sites within the scaffolding structure.  Any additional hazard introduced by the defects alleged by plaintiff--the absence of a fall protection system, swing gates, or slip resistant ladder steps and the presence of a shorter ladder on one end of the platform--would have been obvious, not obscured in a way that would make the scaffolding structure less safe than expected.

Finally, the Court notes that the absence of additional safety features above and beyond those provided by Safway does not demonstrate that the scaffolding structure and attached ladder constituted an unreasonably dangerous condition.  Certainly, one can imagine any number of additional measures that would have made the scaffolding on the Project safer.  "Evidence that a product could be made 'safer' does not establish that it was less safe than would be expected by the ordinary customer," however.  Prince, 90 P.3d at 1027 n.5.

Accordingly, the Court determines that plaintiff has failed to raise a genuine issue of material fact as to at least one element of her claim of products liability, that is, that the scaffolding's assembly made the scaffolding unreasonably dangerous, and, therefore, grants summary judgment as to that claim.  Celotex Corp., 477 U.S. at 322 ( "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who

---

[7]  Plaintiff's argument in its surreply relating to the issue of unreasonable dangerousness is, actually, additional argument relating to the scaffolding's defectiveness.

fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.").

## VII.

**IT IS THEREFORE ORDERED** that defendant's motion for summary judgment (Dkt. # 164) as to plaintiff's claims of negligence, negligence per se, negligent supervision, negligent training, and products liability is hereby **granted**.

**IT IS FURTHER ORDERED** that defendant's objection to deposition designations (Dkt. # 194) is found **moot**, and the March 20, 2006 jury trial is hereby **stricken**.

**DATED** this 6th day of March, 2006.

_____
CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT